IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| HIEP NGO, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:13-CV-138-Y |
| | § | |
| J.C. Holland, Warden, | § | |
| USP-McCreary, | § | |
| GREG ABBOTT, Attorney General, | § | |
| the State of Texas, | § | |
| Respondents. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND NOTICE AND ORDER

This cause of action was referred to the United States Magistrate Judge pursuant to the

provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for

the Northern District of Texas.  The Findings, Conclusions, and Recommendation of the United

States Magistrate Judge are as follows:

### I. FINDINGS AND CONCLUSIONS

#### A. NATURE OF THE CASE

This is a petition for a writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

#### B. PARTIES

Petitioner Hiep Ngo, Prisoner No. 16310-179, is a state prisoner currently confined in the

Federal Bureau of Prisons (BOP) at USP McCreary in Pine Knot, Kentucky.

Respondent J.C. Holland is Warden of USP McCreary.  Respondent Greg Abbott is the

Attorney General of the State of Texas.

## C. FACTUAL AND PROCEDURAL HISTORY

On July 30, 2004, petitioner was indicted for the murder of Vu Doan in the 371st District Court of Tarrant County, Texas, cause number 0929149D.  On November 6, 2008, a jury found petitioner guilty of the offense, petitioner pleaded true to an enhancement paragraph in the indictment, and the trial court sentenced him to life imprisonment.  (SHR[1] at 91)  The Second District Court of Appeals of Texas affirmed the trial court's judgment of conviction, and the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review.  (SHR at 94-106) *Ngo v. State,* PDR No. 1369-09.  Petitioner also filed a state habeas application challenging his conviction, which was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court.  (SHR at cover)

The Second Court of Appeals set forth the factual background of the case as follows:

> On August 10, 2002, Vu Doan was shot in the head and killed in front of a pool hall located in a strip shopping mall.  Prior to the shooting, the pool hall, which had been "completely packed," began to clear out as the majority of the customers left.  Michael Sengvilay, who was sixteen years old on the night of the shooting, had gone to the pool hall with a couple of friends, including Doan, to "waste some time" before attending a concert at a nearby club.  Sengvilay entered the pool hall and saw Ngo, whom he knew although they were not friends.  He noticed that Ngo had a black eye.  Sengvilay then exited the club and began talking and "horse playing" in front of the pool hall with Doan and their other companions.  While in the parking lot, he heard Ngo and another man start to argue and then saw Ngo fire a pistol in the air several times while screaming.  Bystanders outside of the pool hall began to scatter as Ngo lowered the pistol and started to fire into the crowd.  Sengvilay and Doan ran towards the parking lot, but Doan apparently turned back toward the pool hall.  Sengvilay crouched behind a car looking for his friend.  He watched Ngo drive off with another man.  As he surveyed the parking lot, he saw Doan on the ground with a gunshot wound in the head.

_____

[1]"SHR" refers to the state court record of petitioner's state habeas application no. WR-78,788-01.

2

At trial, Lana Vo, the manager of the pool hall, testified that Ngo was a customer and that on the night of the shooting Ngo was at the pool hall and had a black eye. She testified that the shooting had occurred outside of the pool hall and that she was given two descriptions of the shooter by people fleeing into the pool hall. One person stated that the shooter had a black eye, and the other reported that the shooter was a "short and bulky guy." When she heard these descriptions, Vo "thought of" Ngo because he matched the description of the shooter.

Julie Ly, who was nineteen years old at the time of the shooting, testified that she personally knew Ngo. She explained that she was sitting in her car in the parking lot in front of the pool hall waiting for a friend and saw a crowd emerge from the pool hall and mill around in front of the entrance. She saw Ngo approach a nearby car but then lost sight of him. Ly heard a shout and then saw Ngo fire a pistol first into the air, then into the crowd in front of him. Ly saw Doan get shot.

Han Doa testified that she has known Ngo for three years. She stated that she went to the pool hall on the evening of the shooting to meet her boyfriend Tinh Nguyen. Inside the pool hall, she saw Nguyen with Ngo. Doa left the pool hall to speak with a friend in the parking lot. She was standing next to Nguyen's car when Nguyen and Ngo walked up and opened the trunk of the car. She saw Ngo take an object out of the trunk and walk toward the crowd that had gathered outside of the pool hall. Minutes later, Doa heard shots fired, although she could not see the shooter. Ngo and Nguyen then rushed towards Nguyen's car, and Nguyen ordered Doa to get into the vehicle and drive. Four people were present in the car as Doa pulled away: Doa in the driver's seat; Nguyen next to her; and Ngo and a woman Doa did not know in the back seat. Nguyen forced Doa to drive to Houston. Doa testified that during the drive, Ngo and Nguyen discussed what had occurred and Ngo admitted to firing the shots in front of the pool hall.

After the shooting, police talked to Sengvilay, Vo, and Ly. Sengvilay and Ly told the police that Ngo was the shooter, and Vo told them that she suspected that Ngo was the shooter.

By early 2007, Ngo had relocated to Louisiana and had become a "very good associate[ ]" of Wesley Lee, a federal felon. Lee testified that Ngo had told him that he had been "at a club, some type of game room" when he "got into it with some fools." Ngo told Lee that he went to his car and "waited for the fools to come out." When they exited, "he shot one of them in the head, killed one of them. And he got in the car, pull[ed] off," and fled to Houston. Lee contacted the Tarrant County Sheriff's Department after Ngo confessed to him. Lee testified at Ngo's trial that the prosecutor had agreed to write a letter on Lee's behalf seeking a reduction in Lee's prison sentence if he testified against Ngo.

(SHR at 95-97)

## D. ISSUES

Petitioner raises four grounds for relief, which are construed as follows:

(1)     He was refused proper access to state law books and meaningful access to the courts to obtain post-conviction relief;

(2)     His right to a speedy trial was violated and his trial counsel was ineffective by not protecting and asserting the right;

(3)     His trial counsel was ineffective by failing to properly cross-examine the state's witnesses;

(4)     The trial court did not have jurisdiction to place him on trial due to a violation of the Interstate Detainer Act.[2]

(Pet. at 6-11)

## E. RULE 5 STATEMENT

Respondent believes that petitioner has exhausted his state court remedies only as to grounds two and three but that the petition is neither barred by limitations nor subject to the successice petition bar.  (Resp't Ans. at 5)  28 U.S.C. §§ 2244(b), (d), 2254(b).

## F. DISCUSSION

### *Exhaustion of State Court Remedies*

Respondent asserts petitioner's grounds one and four, raised for the first time in this federal petition, are unexhausted and procedurally barred from habeas review.  (Resp't Ans at 5, 11)  A state prisoner must exhaust all available state court remedies before he can obtain federal habeas corpus

---

[2]The Interstate Agreement on Detainers (IAD) is a compact entered into by the majority of the states, the United States, and the District of Columbia enabling a participating state to gain custody of a prisoner incarcerated in another jurisdiction to try him or her on criminal charges. *See* Interstate Agreement on Detainers, § 2, 18 U.S.C.A. App.2; Tex. Code Crim. Proc. Ann. art. 51.14 (West 2006) (Texas's version of the statute).

4

relief, unless there is no state corrective process or circumstances exist which render the state

corrective process ineffective to protect the prisoner's rights. 28 U.S.C. § 2254(b) & (c); *Fisher v.*

*State*, 169 F.3d 295, 302 (5th Cir. 1999). Section 2254(b) and (c) provide in pertinent part:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that —
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>> (B)(i) there is an absence of available State corrective process; or
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>> . . .
> (c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b)(1), (c).

The exhaustion requirement is designed to "protect the state court's role in the enforcement

of federal law and prevent the disruption of state judicial proceedings." *Rose v. Lundy,* 455 U.S.

509, 518 (1982). In order to exhaust, a petitioner must "fairly present" all of his claims to the highest

state court for review.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-48 (1999); *Richardson v.*

*Procunier,* 762 F.2d 429, 430-31 (5th Cir. 1985). In Texas, the Texas Court of Criminal Appeals is

the highest criminal court in the state. *Richardson*, 762 F.2d at 431. Thus, a petitioner may satisfy

the exhaustion requirement by raising his claims in the Texas Court of Criminal Appeals by either

a petition for discretionary review or a state application for habeas relief. Tex. Code Crim. Proc.

Ann. art. 11.07 (West Supp. 2012).

5

On direct appeal, petitioner raised two issues, wherein he claimed the evidence was legally and factually insufficient to sustain his conviction. (SHR at 94) Thus, it was necessary for him to raise all four of his grounds raised in this petition in his state habeas application. Having reviewed the state habeas record, it is clear petitioner could have, but failed to, raise grounds one and four in his state application. Because there has been no fair presentation of the claims to the Texas Court of Criminal Appeals, the claims are unexhausted.[3] Under article 11.07 § 4, petitioner would likely be barred by application of the abuse of the writ rule from any successive effort to exhaust state court remedies. Tex. Code Crim. Proc. Ann. art. 11.07, § 4. As a result, these claims are barred from consideration by this court under the procedural default doctrine. *Nobles v. Johnson,* 127 F.3d 409, 423 (5th Cir. 1997) (finding unexhausted claim, which would be barred by the Texas abuse of the writ doctrine if raised in a successive state habeas petition, to be procedurally barred).

Federal habeas corpus relief is unavailable in the face of a state procedural default unless the petitioner can show (1) cause for the default and actual prejudice, or (2) that the federal court's failure to consider the claim will result in a miscarriage of justice, *i.e.,* that the petitioner is actually innocent of the crime. 28 U.S.C. § 2254(b)(1)(B); *Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Finley v. Johnson*, 243 F.3d 215, 219-20 (5th Cir. 2001). A petitioner demonstrates cause by showing that his efforts to comply with the state's procedural rules were hampered by "some objective factor external to the defense." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). On the other hand, a "fundamental miscarriage" implies that a

---

[3]It is noted that under Federal Bureau of Prisons's Program Statement 1315.07, the Bureau is not required to provide state legal materials to an inmate. (Pet'r Mtn to Expand the Record (doc. #24), "Part B-Response) Instead, state officials are responsible for providing state legal materials to state inmates transferred to federal custody. *Rich v. Zitnay*, 644

constitutional violation probably caused the conviction of an innocent person. *McCleskey v. Zant*, 499 U.S. 467, 502 (1991).

Petitioner asserts he could "go no further [in seeking postconviction relief] because" he did not have "the addresses or acces[s] to proper law books to follow procedure of case law to gu[i]de" him. (Pet. at 6)  The record reflects, however, that petitioner requested only a copy of the Texas Rules of Appellate Procedure and that his first request to state court was in late December 2012, after his direct appeal and state habeas proceedings had already concluded.  (Pet'r Mtn to Expand the Record, Attachments)  Thus, petitioner has not given an adequate explanation to excuse his default or established that he suffered actual prejudice by not having a copy of the state appellate rules after the fact.  Nor has petitioner demonstrated that he is innocent of the crime for which he was charged and convicted. *See Lara v. Johnson*, 141 F.3d 239, 243 (5th Cir. 1998).

Accordingly, petitioner's grounds one and four are procedurally barred from federal habeas review. *Coleman*, 501 U.S. at 750-51.  Under these circumstances, the proper action is to dismiss the claims with prejudice. *Horsley v. Johnson*, 197 F.3d 134, 137-38 (5th Cir. 1999); *Jones v. Jones*, 163 F.3d 285, 296 (5th Cir. 1998).  Thus, the following discussion relates only to petitioner's grounds two and three.

### *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts

in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The Act further requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Finally, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits. *See Barrientes v. Johnson*, 221 F.3d 741, 779-80 (5th Cir. 2000); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). Under these circumstances, a federal court may assume the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied. *Townsend v. Sain,* 372 U.S. 293, 314 (1963); *Catalan v. Cockrell,* 315 F.3d 491, 493 n.3 (5th Cir. 2002); *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001); *Goodwin v. Johnson,* 132 F.3d 162, 183 (5th Cir. 1997).

### 3. Ineffective Assistance of Counsel

In grounds two and three, petitioner claims he received ineffective assistance of trial counsel because counsel failed to present the motion for speedy trial on file with the court and to properly cross-examine state witnesses, "advocate his cause in the second trial due to conflict of opinion should I take the offered plea," and to "point out inconsistent testimony of witnesses to the jury.[4] (Pet. at 8-9)

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.

In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where, as here, a petitioner's ineffective assistance claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an

---

[4]Respondent asserts petitioner's speedy trial claim is procedurally barred from federal habeas review because the state habeas court relied on Texas's "contemporaneous objection" bar in finding the issue waived. (Resp't Ans. at 11-12; SHR at 71)  However, the issue is addressed only in the context of an ineffective assistance claim.

unreasonable application of the standard set forth in *Strickland. See Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Santellan v. Dretke*, 271 F.3d 190, 198 (5th Cir. 2001).

The state habeas judge, who also presided over petitioner's trial, conducted a hearing by affidavit. William H. "Bill" Ray, petitioner's court-appointed attorney, responded to petitioner's allegations in an affidavit as follows:

> Applicant actually had two trials, the first trial resulted in a mistrial due to one of the State's witnesses mentioning that Applicant was in federal custody. That mistrial occurred on September 22, 2008. The second trial concluded on November 6, 2008.

> I was also appointed to represent Applicant on appeal. I filed a brief alleging two points of error in the Second Court of Appeals in Fort Worth. After Applicant's case was affirmed on direct appeal, I filed a Petition for Discretionary Review in the Court of Criminal Appeals. That petition was denied by the Court of Criminal Appeals.

> . . .

> I was appointed on or about August 1, 2007 to represent Applicant. Applicant was serving a federal sentence, which occurred after the murder that [is] the subject of this application, and had been brought to Tarrant County for trial from federal prison. . . . It appears that Applicant was booked into the Tarrant County Jail on July 26, 2007 . . . .

> I filed a pretrial [constitutional] motion for speedy trial on August 1, 2007. There was no formal hearing on that motion and the trial occurred in September of 2008, which was well within a reasonable time, given the size of the court's docket. Applicant wrote me a letter which I received on May 14, 2008 asking about whether the speedy trial motion was ever ruled on and I responded on May 16, 2008 by telling Applicant that the court would try his case when the docket allowed it to do so. . . . Applicant went to trial in September of 2008, and after the mistrial, a second time in November 2008. Essentially, Applicant asked about when he might be going to trial and I explained that he would go to trial within a reasonable time. Applicant did in fact go to trial in a reasonable time.

> . . .

Applicant also claims that I did not effectively represent him in his second trial. I believe that the record in his case shows I did in fact adequately represent him by pointing out the inconsistencies and motives of the witnesses in his trial. . . . Applicant was identified by several eyewitnesses who knew him as being involved in the shooting. There was also a witness who testified that Applicant confessed to him while they were in federal prison that Applicant had done the shooting. . . . I pointed out at trial and on appeal the inconsistencies in the testimony, as well as the bias in the State's witness from the federal prison, however, the jury chose to believe the State's case beyond a reasonable doubt and found Applicant guilty.

Applicant did write me after his appeal and denied and voiced his thanks for my services. Applicant also sent me a Christmas card thanking me, which was postmarked on December 18, 2008. Both of these items . . . thanked me for my services and were written before his final appeal was denied. It is only after that point in time that Applicant now claims I was ineffective and I would submit that assertion is incorrect and unsubstantiated.

(SHR at 38-41; Clerk's R. at 21)

Based on counsel's affidavit, in conjunction with the state court record and her own recollection of the proceedings, the state habeas judge entered the following relevant findings of fact:

13. Hon. Ray did not present the motion for speedy trial to the trial court because the trial occurred in September 2008 which he determined was within a reasonable time in light of the trial court's docket.

14. Applicant was held no bond pre-trial because he was still serving his federal sentence.

15. After filing his motion for a speedy trial, Applicant was appointed an investigator and additional funds.

16. There is no evidence that Applicant was harmed by the delay from August 1, 2007 until his trial in September 2008.

17. Counsel's decision not to present the speedy trial motion to the trial court was the result of reasonable trial strategy.

      . . .

19. Hon. Ray cross-examined each witness.

11

20.    Applicant's letters to Hon. Ray thanking him for his representation after his trial is inconsistent with Applicant's claims that Hon. Ray refused to properly represent him.

21.    Applicant's letters to Hon. Ray thanking him for his representation after his trial is inconsistent with Applicant's claims that Hon. Ray failed to advocate for Applicant once he refused the state's plea offer.

22.    There is evidence that Hon. Ray properly represented Applicant at trial.

23.    Applicant presents no evidence to support his claim that counsel's cross-examination of the State's witnesses was not "meaningful."

24.    Applicant's counsel argued the inconsistencies of the witnesses' testimony to the jury during closing argument.

25.    There is no evidence that counsel failed to present "the same" [in]consistencies to the jury that were brought out in the first trial.

26.    Hon. Ray's affidavit is credible and supported by the record.

(SHR at 68-69) (record citations omitted)

Relying on its factual findings, and applying the *Strickland* standard, the state habeas court concluded petitioner failed to show that counsel's decision not to present the speedy trial motion represented deficient conduct or that a reasonable probability exists that the result of the proceeding would have been different had counsel presented the trial court with the motion. (SHR at 70-71) The court further concluded petitioner failed to show that counsel did not conduct "meaningful" cross-examination of the state's witnesses, that counsel did not properly represent petitioner, that counsel's representation fell below an objective standard of reasonableness, or that a reasonable probability exists that the result of the proceedings would have been different had counsel conducted his defense differently. (SHR at 70-71) In turn, the Texas Court of Criminal Appeals rejected petitioner's claims based on the trial court's findings.

12

Petitioner has wholly failed to rebut the presumptive correctness of the state court's factual findings, which are supported by the record. Thus, applying the appropriate deference to the factual determinations, the state courts' decision denying petitioner's ineffective assistance claims is not contrary to or involve an unreasonable application of *Strickland.*

In *Barker v. Wingo,* 407 U.S. 514, 530 (1972), the Supreme Court set out four factors that must be weighed in making a constitutional speedy-trial violation determination. Those factors are length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. Petitioner makes no legal argument in support of his claim nor does he address these factors in his pleadings. Moreover, the state habeas court found no evidence that petitioner was actually harmed by the delay. Thus, petitioner has not demonstrated a violation of his constitutional speedy-trial right. *United States v. Parker*, 505 F.3d 323, 328 (5th Cir. 2007).

Further, tactical and strategic choices made by counsel, including whether to cross-examine witnesses and to what extent, involve the exercise of professional judgment and are virtually unchallengeable on habeas review. *Ford v. Cockrell*, 315 F. Supp. 2d 831, 859 (W.D.Tex. 2004), *aff'd*, 135 Fed. App'x 769 (5th Cir. 2005). *See also Strickland*, 446 U.S. at 690. Petitioner's conclusory allegations of ineffective assistance are insufficient to support such claims. *Ross v. Estelle,* 694 F.2d 1008, 1011 (5th Cir.1983); *Johnson v. Cockrell,* 306 F.3d 249, 255 (5th Cir. 2002); *Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir. 1990).

## II. RECOMMENDATION

Based on the foregoing, it is recommended that grounds one and four in petitioner's petition for writ of habeas corpus be DISMISSED with prejudice and grounds two and three be DENIED.

### III.  NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until November ___*15*___, 2013.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

### IV.  ORDER

Under 28 U.S.C. § 636, it is ordered that each party is granted until November ___*15*___, 2013, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation.  It is further ordered that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ordered that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED October _____25_____, 2013.


_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE